(956 P.2d 733)

No. 78,168

STATE OF KANSAS, *Appellee*, v. MICHAEL BUTLER, *Appellant*.

Opinion filed March 27, 1998.

*Kirk Redmond*, student intern, *Rick Kittel*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Robert A. Walsh*, county attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before BRAZIL, C.J., PIERRON, J., and MERLIN G. WHEELER, District Judge, assigned.

PIERRON, J.: Michael Butler appeals his convictions of one count of battery against a law enforcement officer, a class A person misdemeanor, in violation of K.S.A. 1996 Supp. 21-3413, and three counts of criminal threat, a severity level 9 person felony, in violation of K.S.A. 21-3419. Butler claims the trial court failed to instruct on the lesser included offense of disorderly conduct. We affirm.

Prior to the events in this case, there had been a court order entered allowing law enforcement officers to require Butler to take a portable breath test at any time at their discretion. The order also allowed them to enter his home if they felt he was there and avoiding them. Further, the order permitted the officers to arrest Butler if he refused to take a breath test or if they had reason to believe he had been consuming alcohol. The validity of this order is not challenged.

Officers Mark Hughey, Andre McDaniel, and Burton Nondorf of the Cloud County Sheriff's Department responded to a report that Butler had been making threatening phone calls. The officers attempted to locate Butler at his house and then his mechanic shop, but he was not at either place. The officers then checked the

residence of Ethel Breault, located next door to Butler's mechanic shop. Looking through the windows, the officers saw Butler watching television.

Officer Hughey knocked at the front door, and Breault answered. Officer Hughey asked to speak with Butler. Butler called out, "I'm not here." After several requests, Butler agreed to talk with the officers on the front porch. Officer Hughey asked Butler to submit to a portable breath test, but he refused. Butler became belligerent and began using profanities towards the officers. Butler's eyes were bloodshot and watery, he smelled of alcohol, and he walked unsteadily. Officer Hughey stated the conversation with Butler lasted for approximately 10 minutes.

Officer Hughey told Butler he was under arrest for refusal to take the breath test. Butler approached Officer Hughey with a clinched fist and Officer McDaniel sprayed Butler with pepper spray. The officers placed Butler on the floor and handcuffed him. Officer Hughey testified that Butler yelled out, "Mark Hughey is a drug-selling fucker, and I'm going to kill him when I get out." The three officers picked up Butler and took him to Officer Nondorf's car. While the officers were trying to put Butler in the back seat of the patrol car, he repeatedly spit, kicked, bit, and head butted all three of them. Officer Hughey was kicked hard in the chest and bitten on the right hand.

Officer Nondorf began to drive away. Butler spit in Officer Nondorf's face, continued kicking, and began banging his head into the back window of the patrol car. The officers decided that a patrol car with a wire mesh separating the back and front seats was necessary to transport Butler. After switching Butler to such an equipped patrol car, the officers determined the wire mesh could not withstand the force of Butler's kicks, so they switched back to Nondorf's patrol car. Officers McDaniel and Hughey accompanied Butler in the back seat of the patrol car. Officer McDaniel had his arm around Butler's head and Officer Hughey restrained Butler's legs. They draped a plastic raincoat over Butler's head so he could not spit on them.

Officer Hughey testified that Butler made several comments that he had AIDS and the officers were going to get the disease

because of his spitting and biting. Officer Hughey testified that Butler repeatedly threatened that when he got out of jail he was going to get a gun and shoot and kill Officers Hughey and Mc-Daniel.

At the jail, Butler was put into a straitjacket because he was hitting his head against the wall on the holding cell. Officer Hughey testified that even with the straightjacket on, Butler continued to try and kick, bite, and head butt the officers. Officers Hughey and Kearn were in the immediate vicinity of the holding cell when Butler spoke directly to Kearn stating that before he left the state of Kansas, he was going to kill a bunch of officers and Kearn was going to be the first one.

Butler testified he never refused to take a breath test that evening. He claimed McDaniel sprayed him with pepper spray for no apparent reason. Butler said he was caught on one of the officer's belts as he fell forward from the effects of the pepper spray. Butler claimed that Officer Hughey drew his gun, pointed it at him, and stated, "Come on, you want it, come get it." Butler said the officers dropped him off the porch and sprayed him again with pepper spray.

Butler testified he was thrashing in the back of the patrol car because Officer McDaniel was holding a club against his neck and he was losing consciousness. Butler testified that while in the holding cell he was trying to remove the mucus caused by the pepper spray by wiping his head against the wall. Butler testified Officer Kearn asked him if he was going to kill any cops, to which he sarcastically replied, "Yeah right, I'm going to kill some cops."

A summary of Butler's testimony is *not* that he claimed to have been guilty of disorderly conduct. He testified he had done nothing wrong and had been unreasonably physically abused by the police.

At trial, Butler requested a jury instruction on disorderly conduct as a lesser included offense of criminal threat. The court ruled disorderly conduct was not a lesser included offense based on the evidence that the terroristic threats were threats to harm the officers in the future with weapons. Therefore, the elements of the two crimes were not identical, and disorderly conduct would not necessarily be proven as a result of proving the criminal threat.

The jury convicted Butler of one count of battery against Officer Hughey and three counts of criminal threat against Officers McDaniel, Hughey, and Kearn.

Butler's only argument on appeal is that the district court erred in failing to instruct the jury on disorderly conduct as a lesser included offense of the charged crimes. Although he did not raise the issue below, he now argues the district court also failed to instruct the jury on disorderly conduct as a lesser included offense of battery of a law enforcement officer.

"A trial court has the affirmative duty to instruct the jury on all lesser included offenses established by the evidence. Instructions on lesser included offenses must be given even though the evidence is weak and inconclusive and consists solely of the testimony of the defendant." *State v. Ordway*, 261 Kan. 776, Syl. ¶ 1, 934 P.2d 94 (1997). The trial court is under an affirmative duty to give an instruction on a lesser included offense even if a defendant fails to request it at trial. *State v. Moncla*, 262 Kan. 58, 73-74, 936 P.2d 727 (1997).

K.S.A. 21-3107 is the applicable statutory provision addressing lesser included offenses. Butler relies on K.S.A. 21-3107(2)(d), which directs that a lesser included offense is any crime necessarily proved if the crime charged were proved. K.S.A. 21-3107(3) outlines the trial court's duty to instruct on all lesser included offenses.

*State v. Fike*, 243 Kan. 365, 367, 757 P.2d 724 (1988), has become the cornerstone case for determining whether a lesser crime is a lesser included crime under K.S.A. 21-3107. *Fike* established a two-part test. First, a court must determine whether all the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged. Under the second prong of the *Fike* test, if the factual allegations in the charging document allege a lesser crime which does not meet the statutory elements test and the evidence which must be adduced at trial for purpose of proving the crime as charged would also necessarily prove the lesser crime, the court should instruct on the lesser crime. 243 Kan. at 368.

Criminal threat is defined in K.S.A. 21-3419 as any threat to "[c]ommit violence communicated with intent to terrorize another,

or to cause the evacuation of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such terror or evacuation."

Battery is defined in K.S.A. 21-3412 as "(a) [i]ntentionally or recklessly causing bodily harm to another person; or (b) intentionally causing physical contact with another person when done in a rude, insulting or angry manner."

Disorderly conduct is defined in K.S.A. 21-4101:

"Disorderly conduct is, with knowledge or probable cause to believe that such acts will alarm, anger or disturb others or provoke an assault or other breach of the peace:
(a) Engaging in brawling or fighting; or
(b) Disturbing an assembly, meeting, or procession, not unlawful in its character; or
(c) Using offensive, obscene, or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others."

Butler concedes that disorderly conduct as a lesser included offense of battery of a law enforcement officer fails the first test under *Fike*. However, he contends the evidence satisfies the second prong of *Fike*. Butler argues proof that he touched the officers in a rude, insolent, or angry manner necessarily proves the crime of disorderly conduct. He contends proof that he kicked and bit the officers establishes the "brawling or fighting" element and proof that he touched and yelled at the officers in a rude and angry manner establishes that he acted with probable cause to believe his actions would alarm and anger the officers.

The State responds that while the evidence presented at trial showed that Butler used profane and abusive language towards the officers, none of the evidence was adduced to prove that he bit, kicked, or spat upon Officer Hughey in an angry manner. The State cites *State v. Gibson*, 246 Kan. 298, 300, 787 P.2d 1176 (1990), where the Supreme Court cautioned against confusing what the State may actually prove in its evidence with what the State was required to prove: "The mere fact that the evidence adduced in proving the crime charged may also prove some other crime does not make the other crime a lesser included offense under K.S.A. 21-3107(2)(d)."

Contrary to Butler's arguments, the elements of disorderly conduct and criminal threat do not share the same elements. The State correctly points out that criminal threat requires the specific intent to terrorize, while disorderly conduct only requires the general intent that certain acts will cause alarm, anger, or resentment in others. The State also argues criminal threat does not require the use of obscene or abusive language as is required for disorderly conduct.

Butler argues the second prong of *Fike* is established for disorderly conduct to be a lesser included crime of criminal threat. He states that in order to prove he made a criminal threat, the State had to prove that he engaged in disorderly conduct. Butler states that the proof he threatened to communicate violence with the intent to terrorize the police officers necessarily proves that he used abusive language with the knowledge that it would alarm or anger the officers.

The State outlined the evidence used for each of the criminal threat convictions: (1) Officer Hughey—Butler stated: "Mark Hughey is a drug-selling fucker, and I'm going to kill him when I get out"; (2) Officer Kearn—Butler stated that before he left the State of Kansas he was going to kill a bunch of officers, and Kearn would be the first one; and (3) Officer McDaniel—Butler stated he was going to "kill all you sons-a-bitches." Under the second prong of *Fike*, the State argues that although Butler's words may have supported a charge of disorderly conduct, they were not the acts for which he was charged.

We cannot find the trial court erred in failing to instruct on disorderly conduct. Disorderly conduct will not usually be a lesser included offense of criminal threat or battery. The elements of disorderly conduct are not all included in the elements of criminal threat or battery against a law enforcement officer. Furthermore, under the facts of this case, proof of criminal threat and battery against a law enforcement officer would not *necessarily* prove disorderly conduct.

Affirmed.