(29 P.3d 974)

No. 84,221

STATE OF KANSAS, *Appellee*, v. GERALD L. COPE, *Appellant*.

Opinion filed July 27, 2001.

*Debra J. Wilson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before PIERRON, P.J., MARQUARDT and BEIER, JJ.

MARQUARDT, J.: Gerald Cope appeals his conviction for making a criminal threat. We reverse.

Cope and his wife divorced in 1998. Cope's ex-wife received the couple's home and sole custody of their children.

Cope was upset over the divorce. In April 1999, Cope was talking to a coworker, Jeremy Walker, and told Walker that he was "going to go to war with" Johnson County by placing explosives around the courthouse. Walker was concerned and mentioned Cope's comments to Chuck Wiegand, another coworker. Wiegand asked Cope if he had "some problems with the Johnson County Courthouse" and Cope repeated the comments he had made to Walker. Later, Cope told Wiegand that "Johnson County had robbed him of any reason to live." Cope stated that he was "stockpiling" money to buy weapons.

Wiegand called the sheriff's department and told Lieutenant Resman about Cope's threats. Lieutenant Resman apprised courthouse security officers about Cope's threats. Photographs of Cope and his vehicle were circulated to security personnel. Lieutenant Resman arranged for officers to follow Cope.

Cope was arrested on May 4, 1999, and consented to a search of his home. The only weapon found was a .22 caliber handgun, which he lawfully possessed.

Cope was charged with one count of making a criminal threat. The complaint filed against Cope stated:

"That on or about the 29th day of April 1999, in the County of Johnson, State of Kansas, Gerald L. Cope did then and there unlawfully, feloniously and willfully communicate a threat to commit violence with the intent to cause the evacuation of any building, place, assembly, or facility of transportation, to-wit: the Johnson County Courthouse, or in reckless disregard of the risk of causing evacuation of any building, place, assembly, or facility of transportation, to-wit: the Johnson County Courthouse, a severity level 9 person felony, in violation of K.S.A. 21-3419, K.S.A. 21-4704 and K.S.A. 21-4707."

Cope filed a motion for change of judge and asked that the Johnson County District Attorney's office be excused from the case. Cope believed that every person who worked in the courthouse was a potential victim of the crime and would have a conflict

of interest. Cope alleged that the entire district attorney's office was "infected with the desire to get [him] for this crime regardless of whether the elements are made." The State responded that there was no conflict of interest and the prosecuting attorney did not view Cope's case any differently than other cases.

Cope's motion to recuse the district attorney's office was denied. However, Cope's motion for a change of judge was granted. A district judge from a different judicial district heard the case.

Cope filed a motion to dismiss, claiming that the criminal threat statute was unconstitutionally vague and overbroad. The motion was denied. A jury convicted Cope of one count of criminal threat. He was sentenced to 24 months' probation with an underlying prison term of 9 months. Cope timely appeals his conviction and sentence.

## Constitutionality of K.S.A. 21-3419

Cope claims that K.S.A. 21-3419 impermissibly infringes upon his guarantee of free speech in violation of the First and Fifth Amendments to the United States Constitution.

Interpretation of a statute is a question of law over which this court has unlimited review. See *State v. Patterson*, 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998). The constitutionality of a statute is presumed. It is the court's duty to uphold the constitutionality of a statute if there is any reasonable way to construe the statute as constitutional. *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, 300, 955 P.2d 1136 (1998).

K.S.A. 21-3419 states:

"(a) A criminal threat is any threat to:
    (1) Commit violence communicated with intent to terrorize another, or to cause the evacuation of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such terror or evacuation."

A statute is overbroad when (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing the law's constitutional from its unconstitutional applications. *State v. Wilson*, 267 Kan. 550, 556-57, 987 P.2d 1060 (1999).

Kansas appellate courts have not previously addressed whether the reckless speech portion of K.S.A. 21-3419 is overbroad. Nebraska's criminal threat statute is almost identical to the Kansas statute. It proscribes speech made with the "intent of causing the evacuation of a building, place of assembly, or facility of public transportation" or speech made "[i]n reckless disregard of the risk of causing such terror or evacuation." A defendant challenged the constitutionality of the Nebraska statute on grounds that it was overbroad. Their court held that the statute was constitutional. *State v. Bourke*, 237 Neb. 121, 123, 125, 464 N.W.2d 805 (1991).

The following examples of Kansas statutes were found to be overbroad: In *DPR, Inc. v. City of Pittsburg*, 24 Kan. App. 2d 703, 953 P.2d 231 (1998), an ordinance forbade the exhibition of a motion picture not given a rating by the Motion Picture Association of America of G, PG, PG-13 or R. In finding the statute overbroad, a panel of this court noted that while the obvious aim of the ordinance was to restrict the display of pornographic films, the effect of the ordinance was to ban perfectly innocent movies which were not given such ratings. 24 Kan. App. 2d at 719. In *State v. Hughes*, 246 Kan. 607, 619, 792 P.2d 1023 (1990), the statute in question was found to be overbroad because it criminalized the dissemination of obscene sexual devices without creating an exception for the purpose of medical and psychological therapy; and in *City of Junction City v. Mevis*, 226 Kan. 526, 535, 601 P.2d 1145 (1979), the ordinance in question was found to be overbroad because it had no provision for transporting a firearm from the place of purchase to the buyer's home.

K.S.A. 21-3419 proscribes the use of words with a specific intended outcome: causing terror or evacuation of a building, or the risk of causing terror or evacuation of a particular building. When we compare K.S.A. 21-3419 with *DPR, Inc., Hughes*, and *Mevis*, we conclude that K.S.A. 21-3419 is not overbroad.

Cope also contends that K.S.A. 21-3419 is unconstitutionally vague so that persons of common intelligence must necessarily guess at its meaning and therefore, the statute violates the Fourteenth Amendment to the United States Constitution. Cope argues that K.S.A. 21-3419 criminalizes words uttered without the intent

to cause an evacuation, meaning that the criminality of his words is dependent upon the subjective reactions of the listener, law enforcement, or the district attorney's office.

The Kansas Supreme Court has determined that the Kansas criminal threat statute does not require the defendant to know his or her threat would be communicated to the person terrorized, since it is sufficient if there is an intent to terrorize or an act in reckless disregard of causing terror. See *State v. Wright*, 259 Kan. 117, 122, 911 P.2d 166 (1996).

In determining whether a statute is void for vagueness, two inquiries are appropriate: (1) whether the statute gives fair warning to those persons potentially subject to it, and (2) whether the statute adequately guards against arbitrary and discriminatory enforcement. A statute is not void for vagueness and uncertainty where it employs words commonly used or previously judicially defined, or the words have a settled meaning in law. *State v. Kirkland*, 17 Kan. App. 2d 425, 428-29, 837 P.2d 846, *rev. denied* 251 Kan. 941 (1992).

In *In re Steven S.*, 25 Cal. App. 4th 598, 606, 31 Cal. Rptr. 2d 644 (1994), the defendant was convicted of desecrating a religious symbol on the private property of another "in reckless disregard of the risk of terrorizing the owner or occupant of that private property." The defendant argued that the words "desecrates" and "religious symbol" were highly subjective, since religious belief by its nature is subject to many different interpretations. In finding the statute constitutional, the court held that the statute required specific mental states, namely that the offender knew the desecrated object was a religious symbol and that he or she acted for the purpose of terrorizing or in reckless disregard of that risk. The court held that the requirement of purposeful or reckless terrorizing ensured against treatment of seemingly innocuous behavior as a desecration. 25 Cal. App. 4th at 614.

In determining whether K.S.A. 21-3419 is vague, we look to the analysis of *In re Steven S.*, where the statute in question required a specific mental state, namely that the offender acted for the purpose of terrorizing or in reckless disregard of that risk.

In *State v. Gunzelman*, 210 Kan. 481, 502 P.2d 705 (1972), the defendant claimed that K.S.A. 21-3419 was vague, indefinite, and uncertain. Even though the statute under which Gunzelman was charged was entitled "terroristic threat," and the words "wanton disregard" were used instead of "reckless disregard," the intent to terrorize or cause evacuation of a building is the same. Such threats are proscribed regardless of what the communicator has in mind. In K.S.A. 21-3419, the word "threat" means the communicator intended to inflict physical or other harm on a person or property; "terrorize" means to reduce to terror by violence or threats; and "terror" means an extreme fear or fear that agitates the body and mind. *Gunzelman*, 210 Kan. at 486.

"Reckless" is defined in K.S.A. 21-3201 as "conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger." *State v. Huser*, 265 Kan. 228, 232, 959 P.2d 908 (1998). The words used in K.S.A. 21-3419 are commonly used and our Supreme Court has previously defined them. The language used in K.S.A. 21-3419 is not vague and persons of common intelligence are not required to guess at its meaning. Accordingly, we find that K.S.A. 21-3419 is not overbroad or vague.

### Sufficiency of the Evidence

Cope contends that he never intended his words to be communicated to anyone at the Johnson County courthouse, no one was terrorized by the statements, and the evidence does not support the inference that he made statements in order to cause an evacuation of the courthouse.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

Cope admitted that he told Walker he would "probably end up having to take them to war, go to war with them." Cope also testified that he stated he "could understand in retrospect to the

things that happened in Columbine." Cope testified that he told Wiegand he could obtain an SKS rifle with armor piercing ammunition. Cope also admitted that he told Wiegand he could "use all the money [he] could get."

Cope concedes that he could legitimately be punished for communicating with the intent that his words cause panic. However, he argues that punishing reckless speech criminalizes the expression of an idea not meant to be expressed in a way that would cause terror or an evacuation.

Cope's comments were made to Walker and Wiegand; however, his threats were directed at the courthouse, and by inference, those who would be in the courthouse. K.S.A. 21-3419 does not require, as an element of the offense, that the defendant know his or her threat would be communicated to those being terrorized. It is sufficient if there is an intent to terrorize or an act in reckless disregard of causing such terror. *Wright*, 259 Kan. at 122.

The question is whether there was sufficient evidence that Cope intended to cause the evacuation of the Johnson County courthouse, or whether his statements were made in reckless disregard of the risk of causing evacuation of the courthouse.

There is no doubt that Cope was distraught and reckless in making the statements about Johnson County and the Johnson County courthouse. Communicated intent can be inferred from physical acts as well as verbal statements. See *State v. Howell & Taylor*, 226 Kan. 511, 515, 601 P.2d 1141 (1979); *State v. Miller*, 6 Kan. App. 2d 432, 435, 629 P.2d 748 (1981). The threat, however, must be a serious threat as distinguished from idle talk or jest. See *State v. Phelps*, 266 Kan. 185, 196, 967 P.2d 304 (1998).

After learning of Cope's statements, law enforcement officers obtained a search warrant and searched Cope's home. They found only one gun, which was legally possessed. Cope was followed by law enforcement officers. They observed nothing to indicate that Cope intended to carry out his threats. His statements did not cause an evacuation, and there is no evidence that the statements were made in reckless disregard of the risk of causing an evacuation of the courthouse. There is no evidence that he terrorized anyone. Cope's statements do not satisfy the requirement of substantial

competent evidence to support a violation of K.S.A. 21-3419. Cope's conviction is overturned.

Because we are reversing on other grounds, we are not addressing Cope's motion to disqualify the Johnson County District Attorney.

Reversed.