No. 84,221

STATE OF KANSAS, *Appellee*, v. GERALD L. COPE, *Appellant*.

(44 P.3d 1224)

Opinion filed April 26, 2002.

*Rebecca E. Woodman*, assistant appellate defender, argued the cause, and *Debra J. Wilson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with her on the briefs for appellant.

*Richard G. Guinn*, assistant district attorney, argued the cause, and *Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, C.J.: Gerald L. Cope was convicted in a jury trial of making a criminal threat (K.S.A. 21-3419[a][1]). He appealed therefrom, raising three issues: (1) constitutionality of K.S.A. 21-3419(a)(1); (2) sufficiency of the evidence supporting his conviction; and (3) alleged error in the trial court's denial of his motion to disqualify the Johnson County District Attorney's office. The Court of Appeals: (1) upheld the constitutionality of the statute; (2) held the evidence to be insufficient, reversing the conviction; and (3) declined to address the disqualification issue. *State v. Cope*, 29 Kan. App. 2d 481, 29 P.3d 974 (2001). The matter is before us on the State's petition for review with the sole issue being the propriety of the Court of Appeals' reversal of the conviction on the grounds of the insufficiency of the evidence.

## STANDARD OF REVIEW

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Jasper*, 269 Kan. 649, 655, 8 P.3d 708 (2000).

## FACTS

Given the standard of review herein, the facts will be stated in the light most favorable to the prosecution. Defendant and his wife were divorced in 1998 in the Johnson County District Court. In that proceeding, the wife received the family residence and sole custody of their children, and defendant was denied the right of visitation. In April 1999, defendant was employed as a cement truck driver. He had a conversation with another driver, Jeremy Walker, with the same company while at a Gardner, Kansas, construction site. Defendant advised Walker how angry he was over the loss of his wife and family in the divorce proceeding and that he was going to war with Johnson County. He elaborated that he was going to place C-4 explosives around the Johnson County courthouse and indicated automatic weaponry would also be used. Walker was concerned about defendant's comments and, within a day (April 29, 1999), relayed them to another coworker, Charles Wiegand, whom he knew to be a former police officer. Wiegand sought out defendant and talked to him about his comments to Walker. Defendant basically reaffirmed the statements he made to Walker.

On April 30, 1999, Wiegand contacted John Resman, a lieutenant with the Johnson County Sheriff's Department. He relayed the substance of his conversations with Walker and defendant. Wiegand also advised that defendant was not taking his prescribed antidepressant medication. That evening, Wiegand went to defendant's residence, ostensibly to look at a truck defendant had for sale. The matter of defendant's rage against those in the Johnson County courthouse came up again and defendant stated he was stockpiling money with which to buy a Chinese SKS assault rifle

with armor piercing shells. Further, he knew where he could buy what he needed to carry out the assault. Defendant advised he had made up his mind to proceed with the attack. He further advised that he knew he would die but he was going "to whack as many people as possible." During the conversation defendant became visibly upset, cried, and "bobbed up and down." Defendant advised that Johnson County had robbed him of any reason to live.

The next morning, Wiegand relayed to Resman the conversation with defendant which had occurred the previous night. Both Wiegand and Resman were very concerned that defendant posed a real threat to courthouse personnel. Courthouse security was advised of the situation, and photographs of defendant and his vehicle were distributed to security. Defendant was placed under surveillance. He was arrested on May 4, 1999, and charged with making a criminal threat in violation of K.S.A. 21-3419. Initially, defendant was charged as follows:

"That on or about the 29th day of April 1999, in the County of Johnson, State of Kansas, Gerald L. Cope did then and there unlawfully, feloniously, and willfully communicate a threat to commit violence with the intent to cause the evacuation of any building, place, assembly, or facility of transportation, to-wit: the Johnson County Courthouse . . . , a severity level 9 person felony, in violation of K.S.A. 21-3419; K.S.A. 21-4704 and K.S.A. 21-4707."

K.S.A. 21-3419, the criminal threat statute, reads as follows:

"(a) A criminal threat is any threat to:
(1) Commit violence communicated with intent to terrorize another, or to cause the evacuation of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such terror or evacuation; or
(2) adulterate or contaminate any food, beverage, drug or public water supply.
"(b) A criminal threat is a severity level 9, person felony.
"(c) As used in this section, 'threat' includes any statement that one has committed any action described by subsection (a)(1) or (2)."

(NOTE: The other two statutes referenced in the complaint relate to sentencing.)

Prior to trial, Cope filed a motion to have the judge and the Johnson County District Attorney's office recused from the case. The district court denied the request to recuse the district attor-

ney's office. The judge recused, and a judge from a different judicial district heard the case. Also, the district court denied Cope's motion for dismissal grounded on a claim the statute was unconstitutionally vague and overbroad.

The State amended the complaint and proceeded to trial on only one theory of criminal threat as proscribed by K.S.A. 21-3419. In accordance with the amended complaint, the district court instructed the jury on this theory as follows:

"The defendant, Gerald L. Cope, is charged with criminal threat. Mr. Cope pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That Mr. Cope threatened to commit violence;

"2. That such threat was communicated *in reckless disregard of the risk of causing* the evacuation of the Johnson County Courthouse; and

"3. That this act occurred on or about the 29th day of April, 1999 . . . ." (Emphasis added.)

The jury did not receive instruction on the original theory that such threat was communicated with the intent to cause the evacuation of the building.

The jury found Cope guilty of one count of criminal threat. The district court sentenced him to 24 months' probation with an underlying prison term of 9 months.

In its opinion herein, the Court of Appeals states in pertinent part:

"Cope contends that he never intended his words to be communicated to anyone at the Johnson County courthouse, no one was terrorized by the statements, and the evidence does not support the inference that he made statements in order to cause an evacuation of the courthouse.

. . . .

"Cope admitted that he told Walker he would 'probably end up having to take them to war, go to war with them.' Cope also testified that he stated he 'could understand in retrospect to the things that happened in Columbine.' Cope testified that he told Wiegand he could obtain an SKS rifle with armor piercing ammunition. Cope also admitted that he told Wiegand he could 'use all the money [he] could get.'

"Cope concedes that he could legitimately be punished for communicating with the intent that his words cause panic. However, he argues that punishing reckless speech criminalizes the expression of an idea not meant to be expressed in a way that would cause terror or an evacuation.

"Cope's comments were made to Walker and Wiegand; however, his threats were directed at the courthouse, and by inference, those who would be in the courthouse. K.S.A. 21-3419 does not require, as an element of the offense, that the defendant know his or her threat would be communicated to those being terrorized. It is sufficient if there is an intent to terrorize or an act in reckless disregard of causing such terror. *Wright,* 259 Kan. at 122.

"The question is whether there was sufficient evidence that Cope intended to cause the evacuation of the Johnson County courthouse, or whether his statements were made in reckless disregard of the risk of causing evacuation of the courthouse.

"There is no doubt that Cope was distraught and reckless in making the statements about Johnson County and the Johnson County courthouse. Communicated intent can be inferred from physical acts as well as verbal statements. See *State v. Howell & Taylor,* 226 Kan. 511, 515, 601 P.2d 1141 (1979); *State v. Miller,* 6 Kan App. 2d 432, 435, 629 P.2d 748 (1981). The threat, however, must be a serious threat as distinguished from idle talk or jest. See *State v. Phelps,* 266 Kan. 185, 196, 967 P.2d 304 (1998).

"After learning of Cope's statements, law enforcement officers obtained a search warrant and searched Cope's home. They found only one gun, which was legally possessed. Cope was followed by law enforcement officers. They observed nothing to indicate that Cope intended to carry out his threats. His statements did not cause an evacuation, and there is no evidence that the statements were made in reckless disregard of the risk of causing an evacuation of the courthouse. There is no evidence that he terrorized anyone. Cope's statements do not satisfy the requirement of substantial competent evidence to support a violation of K.S.A. 21-3419. Cope's conviction is overturned." *State v. Cope,* 29 Kan. App. 2d at 486-88.

We disagree with some aspects of this analysis and the result reached therein.

First, the Court of Appeals' opinion states the issue as being:

"The question is whether there was sufficient evidence that Cope intended to cause the evacuation of the Johnson County courthouse, or whether his statements were made in reckless disregard of the risk of causing evacuation of the courthouse." 29 Kan. App. 2d at 487.

The case was tried on the theory that the statements were made in reckless disregard of the risk of causing evacuation—consistent with the allegation of the amended complaint and closing argument. "Intention to cause evacuation" was not and is not an issue in this case. The opinion's analysis spends little time on what defendant said or the circumstances thereof. More space is devoted

to what occurred after the statements were made, such as only one registered gun being found in the execution of the search warrant and the fact the courthouse was not evacuated. The opinion then flatly states: "[T]here is no evidence that the statements were made in reckless disregard of the risk of causing an evacuation of the courthouse." 29 Kan. App. 2d at 487. That was the principal question for the jury to determine. The opinion goes on to state: "There is no evidence he terrorized anyone," even though this was not an element of the offense as tried. 29 Kan. App. 2d at 487.

As previously noted, the State relied upon the conversation between defendant and Wiegand which occurred at defendant's home as the threat giving rise to this charge. The facts that only one gun was found during the later execution of the search warrant or that no evacuation of the courthouse actually occurred have no relevance to the issue before us.

Defendant contends the Court of Appeals was correct in finding that there was no evidence his statements were made in reckless disregard of the risk of causing an evacuation of the courthouse. Regardless of whether the threat is real or even capable of being carried out, it is the reaction desired by the communicator, or in this case, the communicator's reckless disregard of the possibility of creating that reaction which constitutes the offense. Compare *State v. Miller*, 6 Kan. App. 2d 432, 435, 629 P.2d 748 (1981) (case brought on theory communicator intended to terrorize, rather than reckless disregard of evacuation).

In this case, the determination of whether the statements were made in reckless disregard of the risk of causing an evacuation of the courthouse was the primary issue for the jury to decide. In making this determination the totality of the circumstances, including the relationship of the individuals involved, must be considered.

Defendant, Wiegand, and Walker were cement truck drivers for the same company. Defendant had only been an employee for a few weeks when his conversation with Walker occurred. This conversation occurred on a job site. There is no indication the men were friends. Defendant's deep-seated rage apparently bubbled to the surface at this date and place because it was near the family

residence defendant had lost in the divorce proceeding. Defendant talked about placing bombs around the Johnson County court-house and launching an attack on it with automatic weaponry. He indicated the attack would occur soon. This conversation alarmed Walker, who told Wiegand because Wiegand had previously been a· police officer in Illinois. Wiegand sought out defendant in the company break room, and defendant in essence, repeated what he said earlier to Walker. Additionally, Wiegand was told by defendant that he was not taking his antidepressant medication. Wiegand was concerned that a serious risk of violence was present and contacted Resman, a lieutenant with the Johnson County Sheriff's Depart-ment, who also took the matter very seriously.

That evening, Wiegand went to the defendant's home, ostensibly to look at a truck, but really to talk to defendant further about his threats against the courthouse. Resman had asked him to wear a wire for the meeting, but Wiegand declined out of fear for his family's safety. It is this conversation upon which the State relied as the threat herein. Defendant elaborated, telling Wiegand he expected to die in the assault on the courthouse, but intended "to whack as many people as possible." In the account, defendant came across as an angry, desperate man on the edge of losing all control. There is nothing in the circumstances or actual statements made other than defendant's testimony at trial that supports his conten-tion the whole thing was a joke on his part. This conversation was relayed to Resman, who took measures to alert courthouse security as to the risk presented by defendant and caused defendant to be put under surveillance. The charge herein resulted.

The dissent appears concerned that: (1) Wiegand initiated the conversation concerning the courthouse occurring at Cope's resi-dence; and (2) subsequent investigations showed no incriminating evidence of Cope's capability to carry out his threats. These con-cerns lack substance in determining the issue before us. Wiegand did not implant any violent ideas into Cope's thought processes. Wiegand was there because of Cope's prior threats against the courthouse. Presumably, if Cope had indicated his earlier remarks were not serious, that would have been the end of the incident.

Instead, Cope elaborated, stating a plan to shoot as many courthouse personnel as possible.

Further, the fact that subsequent investigations revealed no evidence of Cope's capability to carry out his threats is not a factor in determining whether or not the threat was made in "reckless disregard of the risk."

Under the totality of the circumstances herein, we are convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt.

We affirm the conviction on the sole issue before us, the sufficiency of the evidence supporting the conviction. That portion of the Court of Appeals' opinion holding otherwise is reversed. The case is remanded to the Court of Appeals to consider the issue not addressed in its opinion, namely, the trial court's refusal to disqualify the Johnson County District Attorney's office from prosecuting this case.

As to the sole issue before us, the judgment of the district court is affirmed and the Court of Appeals' decision is reversed. The case is remanded to the Court of Appeals for further proceedings.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.

SIX, J., dissenting: I agree with the Court of Appeals. The State failed to prove that Cope threatened to commit violence in reckless disregard of the risk of causing the evacuation of the courthouse. The State, in its petition for review, relies on *Findlay v. State,* 235 Kan. 462, 467, 681 P.2d 20 (1984) (defendant threatened to kill victim during telephone conversation); *State v. Butler,* 25 Kan. App. 2d 35, 37, 956 P.2d 733, *rev. denied* 265 Kan. 886 (1998) (defendant directly told officer he would kill him and other officers); and *State v. Dubish,* 234 Kan. 708, 720, 675 P.2d 877 (1984) (defendant directly threatened to send two men to victim's house

to harm her if she called police). All involved threats communicated to the intended victim.

The Court of Appeals observed here that: (1) K.S.A. 21-3419 requires a specific mental state of intending to cause terror or evacuation of a building, or acting in disregard of the risk of causing such terror evacuation; (2) the definition of "reckless" requires conduct done under circumstances that show a "realization of the imminence of danger" and "a conscious and unjustifiable disregard of that danger." 29 Kan. App. 2d at 486 (citing *State v. Huser,* 265 Kan. 228, 232, 959 P.2d 908 [1998]).

In my view, the evidence was simply insufficient to establish that Cope possessed the requisite mental state for criminal threat. There was no evidence that he made the statements he did with a realization of, or in conscious disregard of, a risk of causing an evacuation of the Johnson County courthouse. Rather, reviewing all the evidence regarding the events of April 29, 1999, in the light most favorable to the prosecution, the evidence shows that Charles Wiegand, a coworker and former police officer, under the guise of looking at a truck Cope was trying to sell, approached Cope and initiated the discussion about the courthouse. Cope, responding to Wiegand's questioning, became upset and talked about storming the courthouse. Cope also told Wiegand, in the same conversation, that he did not have the weapons and explosives required to storm the courthouse, and, though he claimed he knew a supplier, he admitted he did not have the money to buy them. He claimed he was saving his money and told Wiegand he was not going to do anything immediately. On direct examination, the prosecutor inquired of Wiegand:

"Did you bring up these concerns about the threats that were being made? In other words, do you say to the defendant, I'm hearing from Jeremy (Walker) you got some problems with the Johnson County Courthouse? Is that the way it begins?

Wiegand responded:

"Something along those lines, yes.

On cross-examination, in response to the question "So you got him started, and he started off talking?" Wiegand responded, "Basically, yes."

The Court of Appeals' consideration of the police investigation of Cope after learning of the statements was part of the totality of evidence which must properly be considered in determining whether Cope's statements were made in reckless disregard of the risk of causing an evacuation of the courthouse. "All circumstances surrounding the communication . . . must be considered in determining whether the communication in issue is a terroristic threat." *State v. Miller,* 6 Kan. App. 2d 432, 435, 629 P.2d 748 (1981). Evidence that the police searched Cope's home and found only one gun that was legally possessed and that police followed him and observed nothing unusual, contrary to the majority's inference, were significant.

ALLEGRUCCI, J., joins in the foregoing dissenting opinion.